OPINION AND ORDER

This is an appeal from a criminal contempt conviction on the grounds that the trial court failed to inform Appellant of his right to a jury trial and that there was insufficient evidence to support the trial court’s finding of criminal contempt.
FACTUAL AM) PROCEDURAL BACKOROUNI)

Statement of Facts

This matter arose out of an ongoing village dispute between the Village of Mishongnovi Cultural Preservation Board and the Village of Mishongnovi Interim *464 Board of Directors. See Village of Mish-ongnovi Cultural Preservation Board v. Hendía. Humeyestewa, el al, 03AP000008 (Hopi Ct.App.). In that case, both parties asserted they were the legitimate governing body of the Village of Mishongnovi. At issue was $68,509.39 of Village funds held in First Interstate Bank. Access to the account was maintained by the Interim Board. The Cultural Preservation Board brought suit to control the use of those funds. The trial court ordered on two occasions that neither party withdraw funds from the bank account. See Court Orders of December 21, 1998 and January 25, 1999. I n 1999, the Village of Mishong-novi held an election in which new members were elected to the Interim Board of Directors, including the Appellant, Arthur Batala. See Appellant’s Brief on Appeal (A.B.A.), August 12, 2003 at 6.
Appellant became involved in the present case through his capacity as chairperson of the newly elected Interim Board of Directors. During a village meeting in November 2001, Mishongnovi residents discussed the funds frozen by the court orders of 1998 and 1999 and using those funds to provide services, including hauling wood and coal for the elderly during the winter for Mishongnovi residents. See A.B.A. at 4. The residents present at this meeting voted to have the Defendants, Interim Board members from the original case, Village of Mishongnovi Cultural Preservation Board v. Humeyestewa et al, (hereinafter “Defendants”) turn over the disputed funds to the Interim Board members to cover these services. The members also voted to have the Interim Board pay for the Defendants’ attorney fees out of those funds. See A.B.A. at 4-T>. Appellant told the members these funds had been frozen by the court.
In January 2002 the Village held an election for a new, permanent Board of Directors, to which the Appellant was elected. Appellant and two other newly elected members of the permanent Board possessed signature power over the Village accounts.[1] See A.B.A. at 5. After this election, former Interim Board of Directors turned over the disputed funds to the permanent Board of Directors. See A.B.A. at 5. The funds were then used to pay for water and sewage services for the Village, sanitation services for Hopi ceremonies and the legal expenses of the prior Board. See A.B.A. at 5. Appellant paid for these services by checks issued from the Village bank account.

Procedural History

By motion, the Plaintiff Mishongnovi Cultural Preservation Board moved the trial court to issue an order to show cause why the Appellant should not be held in contempt of court. A hearing was scheduled for October 7, 2002. See A.B.A. at 5.
On February 28, 2003, the court issued its written order finding Appellant in criminal contempt. The Court found that the Appellant was present at both hearings where the orders were issued. The Court held that Appellant was not justified in making withdrawals from the account because residents of Mishongnovi voted to turn over the funds to the Board and authorized it to pay outstanding bills on behalf of the Village. See F.O.C.C. at 2. On April 16, 2008, the court sentenced *465 Appellant to 20 days in prison. In its sentencing order, the court suspended the jail sentence and said it may dismiss this case within six months provided the Appellant does not make any more withdrawals from Village accounts. The six month period ended September 16, 2003 without any additional withdrawals being made by Appellant. See A.B.A. at 6.
ISSUES PRESENTED ON APPEAL
Appellant brought this appeal in a notice filed on April 22, 2003. Appellant argues that the trial court erred by finding Appellant in criminal contempt because it lacked sufficient evidence to prove he had actual notice of the courts order freezing the Village fund. As part of this argument, Appellant states that he was not a party to the underlying suit, therefore he is exempt from the orders. Appellant also contends that the trial court committed reversible error by failing to apprise the Appellant of his right to a jury trial.
DISCUSSION
We must decide whether one who is not a party is deemed to have notice of that court order, regardless of whether that person was a party to the litigation. In this case, we find that Appellant was a party and therefore was subject to a contempt charge.[2]
I. One who has access to funds frozen by a standing court order us deemed to have notice of that court order, regardless of whether that person was a party to the litigation.
Appellant argued that the order did not apply to him because he was not a party and only parties can be held in contempt. Contempt by a court is defined under Title II of Ordinance 21 as “[disobedience or resistance to the carrying out a lawful process made or issued by a judge.” See Ordinance 21, Section 2.15.1. & The Court in Sekayumptewa held that a trial judge had a duty to find a person in contempt if the judge deems that finding necessary to “maintain control over the proceedings and to enforce orders and directives which the judge issues.” See Sekayumptewa at 2 (Hopi Ct.App.1997). Such a finding is necessary, then, for any person who “willfully disregards the authority of the court.” Id. See also Wright, Fed. Practice and Proc. Criminal 2d Section 702, p. 809.
Appellant argues that he is not bound by the court orders because he is not a party to the original case, Village of Mishongnovi Cultural Preservation Board v. Humeyestewa et al, and relies on the language of those orders.[3] The 1998 court order states that no deposits or withdrawals shall be made by or for the benefit of the Village of Mishongnovi by “either party.” Appellant argues that this language exempts him and all other non-parties from the court’s order. Appellant does not address that Defendants, although sued as individuals, were acting on behalf of the Interim Board of Directors, the same Board which Appellant is a member of.
Appellant’s argument directly contravenes established Hopi law and therefore must fail. The Hopi Indian Rules of Civil and Criminal Procedure explicitly deals with cases in which a non-party to an injunction violates that injunction. Rule 34(d) states that injunctions are only bind- *466 tag upon “the parties to the: action, their officers, agents, servants, employees, and attorneys,, and upon those persons in active concert or participation with them who receive actual notice of the order.”[4] A similar rule exists under federal law.[5] This language addresses Appellant’s argument directly. The court orders were issued to prevent funds from being withdrawn from the Mishongnovi bank account by either the Village of Mishongnovi Cultural Preservation Board or the Interim Board of Directors. Appellant concedes he withdrew the funds from the account as a member of the permanent Board of Directors. The permanent Board of Directors was fa “active concert or participation with those who receive actual notice of the order,” i.e. the Interim Board of Directors, because both boards purported to have administrative and fiscal responsibility for the Village of Mishongno-vi.[6]
Furthermore, Appellant argues that his position as a member of the Board insulates him as a non-party from contempt because he was directed to expend funds, and therefore did not act on his own to transfer, withdraw or expend funds. Essentially, he imputes his act upon the Board and therefore, he argues that he cannot be held in contempt. Appellant, knowing of the trial court’s orders of December 21, 199,8 and January 25, 1999, never spoke out against the use of these funds. He continued to use his signature power for Village expenses. Appellant had the option of leaving signatory power to the other Board members but chose not to do so.
Finding Appellant to be bound by the injunction as someone in active concert or participation with actual notice makes sound judicial sense. If non-parties were insulated from contempt judgments, they could run rampant in the face of binding court orders essentially rendering a court’s order meaningless.[7] Admittedly, this issue is complicated by the sparse analysis on contempt proceedings in Hopi case law, yet it seems counter intuitive to say that only parties to a case can be held in contempt. Any reference to parties is noticeably absent, most likely because it is obvious that any person, whether or not they are a party, has the potential to resist or interfere with a court order. For the reasons stated above, we find that Appellant was in active concert with the Board and therefore is subject to the court’s contempt order.
*467 II. Parties with notice of a court order who then violate said order are subject to a contempt charge.
As an alternative argument, Appellant states he had no actual notice of the court’s order. We find that Appellant had actual notice of the orders. First, Appellant attended the status hearings when the court issued its orders and received a certified copy of the December 21,1998 order. This copy contained the caption, “please notice all Board members” in large letters next to his Appellant’s name and directing him to disseminate it to his fellow Interim Board members. See Minute Order, 94CV0008, December 21, 1998. Second, the language of the trial court’s orders was clear.[8] The second order was even more concise than the first and read “IT IS FURTHER ORDERED that there shall be no further withdrawals for any purpose without court order.” See Minute Order, 94CV00008, January 25, 1999. Given Appellant’s attendance at status hearings and receipt of certified notice, Appellant had actual notice of the trial court’s order. Appellant’s actual notice, however, is not necessary dispose of his argument, as long as he was in active concert with “them who receive actual notice of the order,” or more specifically, the Interim Board of Directors.
Appellant does not deny withdrawing these funds. Indeed, his signature appears on many checks paying for services for the Village well after the court issued its orders. See Motion, No, CIVUU089, August 5, 2002. See also Minutes of Village of Mishongnovi, November 20, 2001. Signing these checks was intentional because Appellant was one of three members of the Board of Directors with signature funds over Village funds. However, only two signatures were required on each check, so Appellant could have refused to sign the checks. See A.B.A. at 5. Moreover, Appellant also knew signing the cheeks violated the trial court’s orders because he was present in court when the orders were issued and received a certified copy of the first order via mail. See Minute Orders, December 21, 1998 and January 25, 1999. Given the above, we find that Appellant had actual notice of the Court’s order.
Finally, Appellant argues that the trial court, and this Court, should consider his responsibility to “protect the health of Village members. He states that this responsibility obligated him to sign ehecks to protect the welfare of the Village members.” See A.B.A. at 10. While Appellant’s intent in expending the funds may be taken into consideration, it must be balanced against the necessity of the public to respect and follow an order of the court. Here, Appellant, and in fact the Board, should have sought direction from the court, or sought to modify the court’s order to provide for the emergency services of the Village. Despite his good intentions, Appellant committed an act of contempt by violating the previous orders. Such personal judgment puts all court orders, and thus the integrity of the issuing court, at risk. For these reasons, the finding of contempt must stand.
III. Whether Appellant is entitled to a jury trial depends on whether Appellant’s contempt is civil or criminal.
Appellant argues that the trial court erred when it did not advise him of the *468 right to a jury trial prior to ordering him to serve a term of custody. Before this Court can decide whether Appellant is entitled to a jury trial this Court must determine whether the contempt order imposed is civil or criminal. Several aspects of the nature of contempt must be considered before one can ascertain which rights a person found in contempt enjoys. Each charge has different requirements and goals.

i. Civil vs. Criminal Contempt

Civil contempt is “remedial and intended to coerce the person into doing what he is supposed to do.” Id. at 4. See also Riley v. Superior Court In and For Cochise County, 124 Ariz. 498, 605 P.2d 900 (1979). Further, civil contempt precludes the right to a jury trial and may not be appealed if the order is considered a non-final judgment. See Sekayumptewa at 3.
 Unlike civil contempt, criminal contempt is meant to punish the person for disrespecting the court or interfering with its functioning through his action(s). This action(s) must be intentional in order to find the person in criminal contempt. The burden of proof in such a proceeding is beyond a reasonable doubt.[9] Despite these differences, “an Indian Tribe cannot deny any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law” under the Indian Civil Rights Act. See 25 U.S.C. § 1302. But as stated above, the Hopi Tribe is not bound by the provisions of the Indian Civil Rights Act. As the Sekayumptewa opinion noted, the provisions of the Indian Civil Rights Act may apply to contempt cases in the Hopi Appellate Court.

ii. Direct vs. Indirect Contempt

 Contempt can be direct or indirect. Direct contempt is committed in the presence of the court, and may involve inappropriate behavior or any other act which obstructs justice. No hearing is necessary for a charge of direct contempt because it is done in the presence of the judge, rendering fact finding unnecessary. Moreover, dispensing with due process in such cases is deemed integral to the functioning of the court. See Sekayumptewa at 4. Indirect contempt is not done in the presence of the court, but rather outside the court room. A person charged with indirect contempt has the right to be advised of the charges against him and to defend or explain himself as well as the rights to legal counsel and call witnesses on his behalf. See Sekayumptewa at 4 (quoting Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)).

Hi Nature of Appellant’s Contempt,

Given the different forms of contempt and their corresponding rights, we must determine which category Appellant falls into. Appellant argues he was found in criminal contempt of court because his sentence required twenty days one for one in prison, a punitive measure. If, as Appellant argues, he was found in criminal contempt, Appellant would be entitled to certain due process rights afforded defendants in other criminal cases.[10] The denial of a right to a jury trial, included in the rights afforded to criminal defendants, is the basis for Appellant’s appeal. Appellant only gives the trial court’s sentence of *469 contempt a cursory analysis, however, ignoring a condition which moves his sentence into the realm of civil contempt.
Here, the Court ordered Appellant to serve twenty days in prison for withdrawing funds from the Village account. Without more, this order appears to qualify as criminal contempt. However, the trial court’s provision that the twenty day prison sentence may be suspended if, during the six months following the court’s order, Appellant does not withdraw any additional funds from the Village account changes the character of the contempt to civil. See A.B.A. at 6. This provision suspends the prison sentence provided Appellant refrained from doing something, or in other words, was compelled not to do something. This is a remedial measure. The trial court’s sentence was remedial because it allows Appellant’s sentence to be dropped provided he refrain from withdrawing additional funds from Village accounts in accordance with the court’s 1998 and 1999 orders. The trial court intended to coerce Appellant into obeying its original orders; the alternative for Appellant was serving a sentence of twenty days in prison one for one. Therefore, we find the trial court’s finding of contempt was civil because Appellant’s sentence was contingent on compliance with the original court orders. Moreover, because the six month period ended on September 16, 2003 and Appellant made no additional withdrawals from the Village account during this period, his prison sentence must be suspended.
Finally, this Court must determine whether Appellant’s contempt was direct or indirect. Appellant’s contempt charge stems from withdrawing Village funds in violation of the trial court’s orders of December 21, 1998 and January 25, 1999. This act did not take place in the presence of the court, but rather outside the court, and involved writing checks from the First Interstate Bank account and other withdrawals made by Appellant as a member of the permanent Board of Directors. Because Appellant’s contempt was indirect, he had the right to be made aware of the charges against him, to defend himself against those charges and to call witnesses if need be.[11] However, there is no right to a jury trial guaranteed in cases of indirect contempt. Therefore, the court did not err.
IV. If Appellant is found in civil contempt, no right to a jury trial exists.
Because Appellant was found in civil, rather than criminal, contempt, Appellant is not entitled to the same rights as defendants found in criminal contempt. A finding of civil contempt precludes the right to a jury trial under federal law, a standard recognized by the Hopi Appellate Court.[12] Appellant claims he enjoyed a right to a jury trial under a criminal contempt conviction and was denied that right by the trial court, a claim which depends on the characterizing his conviction as criminal contempt. The conviction was civil and not criminal, however, so Appellant’s claim to a jury trial loses its strength and therefore must fail. Moreover, even if Appellant was found in criminal contempt, this Court has not settled the issue of whether a finding of criminal contempt affords defendant the right to a jury trial.[13]
*470 CONCLUSION
Appellant had actual notice of the trial court’s original orders barring all withdrawals from the Village of Mishongnovi account. Appellant belonged to the Board which had access to the account and attended the court hearings when the orders were issued. Any board or board member with access to funds frozen by a court order is deemed to have notice of that order and must be found in contempt of court to preserve the integrity of that court.
The trial court erred in characterizing Appellant’s contempt conviction as criminal rather than civil. Although the court sentenced Appellant to a prison term, that term would only be served if Appellant continued to withdraw funds from the Village account during the six month period following the sentence. If Appellant abid-ed by the court’s order, his sentence would be suspended. This form of contempt was intended to coerce Appellant into doing something, not to punish Appellant, therefore it was civil contempt.
Appellant’s claim that he was denied the right to a jury trial he. was guaranteed as a criminal eontemnor fails because Appellant was found in civil contempt, not criminal. There is no right to a jury trial attached to this form of contempt. Therefore, the trial court did not err by not informing Appellant of his right to a jury trial because no such right existed.
Having summarized Appellant’s position with respect to Hopi law, the court recognizes what it believes to be good intentions on the part of Appellant. Appellant seems to have the interest of his Village at heart, but his actions essentially dispensed with two court orders and amounted to civil contempt. If political bodies and their members are not subject to court orders and laws, what will become of justice and order in the communities they govern?
ORDER OF THE COURT
It is hereby ORDERED that the judgment of the Tribal Court finding Appellant in In the Matter of Arthur Batata, guilty of criminal contempt of court is REVERSED.
*471 This case is remanded to the trial court to correct the order of contempt consistent with this opinion.

. See A.B.A. at 5. The election for the permanent Board of Directors was orchestrated with the help of the Hopi Tribal Election Registrar, who served as a consultant making sure the election “complied with Hopi election guidelines." Both the permanent Board and the Bank holding the Village funds agreed that no check would be honored unless it had the signatures of two of the three permanent Board members with signature power.

. We do not decide the equity in the court applying the contempt charge to Appellant and not the Board.

. Village of Mishongnovi Cultural Preservation Board v. Humeyestewa, et al. 03AP000008 (Hopi Ct.App.).

. See Hopi Indian Rules of Civil and Criminal Procedure, Rule 34(d).

. See Who, under Rule 65(d) of Federal Rules of Civil Procedure, are persons "in active concert or participation" with parties to action so as to be bound by order granting injunction, 61 ALR Fed 482 (1983). The Federal Rules of Civil Procedure and relevant case law, while not binding on the Hopi Appellate Court, prove instructive in considering Appellant’s argument Rule 65(d) does not distinguish between parties to the injunction w'ho violate it and non-parties “in active concert or participation" with the original parties to the injunction, or in this case, court: order. The court in Royal News Co. v. Schultz, 230 F.Supp. 641 (1964), found the non-party prosecutor’s office had placed itself within the terms of an [earlier] injunction because of knowledge of that injunction. The court’s language could easily fit the present case, holding that “to permit the [non-party] to do that which the court enjoined the defendants from doing would be a stultification of the judicial process." Allowing the Appellant to escape a finding of criminal contempt for violating court orders intended for the parties to the original case would similarly stultify the judicial process.

. -NO

. The purpose of the trial court’s orders in this case was to protect village funds during ongoing litigation to determine who is entitled to use the funds.

. The first order read in pertinent part, "IT IS ORDERED that no withdrawals of any funds on deposit under the name of the Village of Mishongnovi or for the benefit shall be made by either party pending further orders of this court.” See Minute Order, 94CV00Ü08, December 21, 1998.

. See In the Matter of Sekayumptewa et ⅛1. A person may be punished for criminal contempt for defying the authority of a court in a civil action.

. Sec generally, Indian Civil Rights Act, 25 U.S.C. § 1302(6-8).

. See Sekayumptewa at 4 (quoting Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948)).

. See In the Matter of Sekayumptewa et al., No Case Number (Hopi Ct.App.1997). See also Wright, Federal Practice and Procedure: Criminal 2d section 705, p. 830.

.In the Matter of Sekayumptewa. In spite of the language of the Indian Civil Rights Act, 25 U.S.C. § 1302(10), the Court said, “fw]e *470 do not decide today, whether contempt of court is the type of criminal offense contemplated by the IGRA to afford the defendant the right to a trial by jury. However, arguments could be made that a right to a ¡1117 trial is guaranteed to defendants in criminal contempt cases.” Appellant cites three cases from Hopi case law to argue why the failure of the trial court to apprise him of his right to a jury trial constituted reversible error. The first case, Hopi Tribe v. Consolidated Cases of Ami, Gishey and Pavatea, AP-003-89 (Hopi Ct.App.1996) held that'every criminal defendant must be advised of all of his legal rights. See A.B.A. at 7. In the second case, Sinquah v. Hopi Tribe, 99AC000012, 2 Am, Tribal Law 357, 2000 WL 35734274 (Hopi Ct.App.2000), the Court reversed a conviction because there was no legal rights form and therefore no record indicating the Defendant had been advised of his legal rights. See A.B.A. at 8. The third case, In the Matter of Sekayumplewa, et al., No Appellate Number (Hopi Ct.App.1997), outlined rights guaranteed under the Indian Civil Rights Act as potentially applicable to Hopi contempt cases. These rights included to the right to a jury trial, subsection 10 of the Act, See 25 U.S.C. § 1302. The court in that case did outline due process rights for defendants under the Indian Civil Rights Act, 25 U.S.C. § 1302, in contempt cases, but the Hopi Appellate Court has not bound itself to the black letter meaning of that statute. That Act is more instructive than binding for Hopi purposes and used only at the discretion of the Hopi Appellate Court. Language in Sek-aywnptewa supports this interpretation of Hopi authority, saying only that "the section ol the Indian Civil Rights Act [citation omitted] that may apply to contempt proceeding[s] include . [emphasis added]. Furthermore, there was no question of fact to be decided by a jury in this case even in Appellant was convicted of criminal contempt.